IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| CRAIG JONES,<br><br>　　Plaintiff,<br><br>　　　v.<br><br>REPUBLIC SERVICES, INC.,<br><br>　　Defendant. | Civil Action No. AW-10-cv-1999 |

**MEMORANDUM OPINION**

Plaintiff Craig Jones ("Jones") brings this action against Defendant BFI Waste Services, LLC d/b/a Allied Waste Services of Washington ("Allied Waste"), alleging racial discrimination in violation of Title VII. Presently pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 17.) The Court has reviewed the motion papers and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Jones is an African-American male who began working for Allied Waste on December 15, 2000 as a Helper on a rear-load truck. In 2001, Jones became a driver for Allied Waste—a position he retained until his termination. At an unspecified date in 2007 or 2008, Jones requested and was denied an alternative work schedule, namely, a later start time. According to Jones, in spring 2008, he contacted Allied Waste's Corporate Human Resources Office to report

unfair treatment.  Jones neglects, however, to provide additional information regarding the nature and effect of this complaint.

Upon commencement of his employment, Jones received and signed documents detailing Allied Waste's general rules and attendance policy.  (*See* Doc. No. 17-2 at 1; Doc. No. 17-3 at 1.)  Specifically, Allied Waste's attendance policy provides a progressive discipline plan: five tardies result in a written or verbal warning, eight tardies result in suspension, and ten tardies result in termination.  (*See* Doc. No. 17-3 at 1.)  In 2008, Jones received three verbal and written warnings for tardiness.  (Doc. No. 17-9 at 1–3.)  Jones indicated that he had read each Employee Corrective Action Report by signing each report.[1]  (*Id.*)  Furthermore, during his deposition, Jones conceded that he was tardy at least ten times in 2008.  (Doc. No. 17-1 at 75.)  On May 23, 2008, Allied Waste suspended Jones for "excessive absence/tardiness."[2]  (Doc. No. 17-9 at 2.)  On October 24, 2008, Allied Waste terminated Jones for excessive tardiness.

On or around December 5, 2008, Jones filed a complaint with the Maryland Commission on Human Rights ("MCOHR") and the U.S. Equal Employment Opportunity Commission ("EEOC").  (*See* Doc. No. 4-1–4-3.)  Specifically, Jones alleged his suspension and termination were racially motivated.  (*See* Doc. No. 4-2 at 1–2.)  Unlike the Complaint filed in this federal case, Jones's MCOHR complaint does not discuss the denial of an alternative schedule.  (*See id.*)  The MCOHR's March 1, 2011 Written Finding—which the EEOC adopted (Doc. No. 4-1)—corroborates that Jones failed to file a charge with the MCOHR regarding an alternative schedule.  (*See* Doc. No. 4-3.)

---

[1] The May 15, 2008 written warning also documented that Jones received a verbal warning on March 21, 2008. Moreover, the written warning explained the consequences of further tardies.  (Doc. No. 17-9.)
[2] According to Jones, Allied Waste suspended him in October 2008.  (Compl. ¶ 7.)  However, Allied Waste's Employee Corrective Action Report, which Jones signed, indicates that Allied Waste suspended him from May 23, 2008 to May 27, 2008.  (Doc. No. 17-9 at 2.)

On July 21, 2010, Jones filed this action against Allied Waste. (Doc. No. 1.) On December 22, 2010, Allied Waste served Jones with its First Set of Interrogatories, First Request for Production of Documents, and First Request for Admissions. (Doc. No. 17-11.) Jones failed to comply with the discovery requests, despite Allied Waste's attempts—both before and after the established deadline—to garner Jones's cooperation. (*See* Doc. 18.) Therefore, Allied Waste filed a Motion to Compel Discovery (Doc. No. 13) and a Motion for Summary Judgment (Doc. No. 17). Jones did not respond to either motion.

On July 21, 2011, the Court ordered Jones to respond to Allied Waste's discovery requests by August 4, 2011. (*See* Doc. No. 18 at 3.) In addition, the Court informed Jones that he would waive his right to respond to Allied Waste's Motion for Summary Judgment if he did not respond by July 28, 2011. (*See id.*) To this date, Jones has not replied to either order.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The moving party discharges its burden by showing a lack of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325.

To defeat a motion for summary judgment, the nonmoving party must produce affidavits or other similar evidence to demonstrate that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must view the factual evidence and all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Although the Court examines the evidence in the nonmoving party's favor, the nonmoving party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152

F.3d 326, 330–31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III.   LEGAL ANALYSIS

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Jones alleges that Allied Waste violated Title VII when denying his request for an alternative schedule, suspending him, and terminating him. (*See* Doc. No. 4.) After reviewing the record, the Court holds that Jones's claims cannot survive summary judgment.

#### A.   Denial of Alternative Schedule

The Court first addresses Jones's claim that General Manager Henry Alston's refusal to grant Jones an alternative schedule constitutes racial discrimination. Due to Jones's failure to exhaust his administrative remedies, the Court dismisses this claim for lack of subject matter jurisdiction. *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 299 (4th Cir. 2009) (dismissing Plaintiff's Title VII claim for lack of subject matter jurisdiction because of Plaintiff's failure to exhaust administrative remedies).

Prior to filing suit under Title VII, a plaintiff is required to file a charge of discrimination with the EEOC. *See Calvert Group*, 551 F.3d at 300 (citing 42 U.S.C.A. § 2000e-5(f)(1) (West 2003)). A "plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir.

2005). In short, a charge's contents determine the scope of a plaintiff's right to file a federal lawsuit. *See Calvert Group*, 551 F.3d at 300 (citations omitted); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.").

Here, Jones failed to exhaust his administrative remedies concerning Alston's refusal to grant him an alternative schedule. As previously discussed, Jones does not reference alternative schedules in his MCOHR complaint. (*See* Doc. No. 4-2.) Instead, Jones asserts only that his suspension and termination were racially motivated. (*See id.*) Moreover, the MCOHR's Written Finding corroborates Jones's failure to file a charge with the MCOHR regarding an alternative schedule. (*See* Doc. No. 4-3.) Nowhere in the MCOHR's report does the Commission discuss a request or denial of an alternative schedule. (*See id.*)

This claim—denial of an alternative schedule—is considerably different from the discriminatory behavior alleged in the administrative charge—suspension and termination. *Cf. Lawson v. Burlington Indus., Inc.*, 683 F.2d 862, 863–64 (4th Cir. 1982) (barring failure to rehire claim because EEOC charge only alleged illegal layoff). It involves different time periods, actors, and discriminatory conduct. *See Chacko*, 429 F.3d at 506 ("[A] Plaintiff fails to exhaust his administrative remedies where, . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit."). Alston's denial of an alternative schedule is not reasonably related to the factual allegations investigated by the MCOHR and would not have arisen naturally from the MCOHR's

investigation. Accordingly, the Court dismisses Jones's claim that Alston's refusal to grant him an alternative schedule was racially motivated.

### B. Suspension and Termination

Jones did exhaust his administrative remedies concerning his allegation of racially discriminatory suspension and termination. (*See* Doc. No. 4.) Nevertheless, Jones fails to establish a prima facie case of discrimination; thus, his claim fails as a matter of law.

Since Jones does not offer direct evidence of racial discrimination, his claim is analyzed under the burden-shifting proof scheme established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802–05 (1973). *See Taylor v. Va. Union Univ.,* 193 F.3d 219, 230 (4th Cir. 1999) (applying *McDonnell Douglas* to discrimination under Title VII). Under this scheme, a plaintiff must first present a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case, Jones must demonstrate: (1) that he is in a protected class; (2) that he was qualified for his job *and his job performance was satisfactory*; (3) that in spite of his qualifications and performance, he suffered adverse employment action; and (4) that he was treated differently from similarly situated employees who are not members of the protected class. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989); *Nichols v. Caroline County Bd. of Educ.,* 123 F. Supp. 2d 320, 325 (D. Md. 2000).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a "legitimate, nondiscriminatory reason" for the challenged conduct. *McDonnell Douglas*, 411 U.S. at 802. Upon this showing, the plaintiff must offer evidence that the employer's stated reasons are a pretext for a discriminatory purpose. *McDonnell Douglas*, 411 U.S. at 804.

Jones is an African-American male who was both suspended and terminated. Nonetheless, Jones cannot establish a prima facie case of discrimination because Jones does not

demonstrate that his job performance was satisfactory and that Allied Waste treated him differently from similarly situated employees not of his protected class.

The record indicates that Jones was more than fifteen minutes late at least ten times in 2008 (*see* Doc. No. 17-1 at 75), thereby failing to meet Allied Waste's reasonable expectation of promptness (*see* Doc. No. 17-1 at 64, 94; Doc. No. 17-2 ¶ 15). Jones concedes that he was aware of Allied Waste's attendance policy (*see* Doc. No. 17-1 at 52–54, 63–64), that he understood failure to follow it could result in termination (*see* Doc. No. 17-1 at 63–65), and that he did not abide by Allied Waste's policy (*see* Doc. No. 17-1 at 67–68, 70–72). Specifically, on April 21, 2008, Jones received a verbal warning after his fourth tardy in a twelve-month period. (*See* Doc. 17-9 at 1.) On May 15, 2008, Jones received a written warning after his sixth tardy. (*Id.*) This warning also reminded Jones that two additional tardies would result in a three-day suspension. (*See id.*) ("The next 2 lates will result in a 3 day suspension.") (Source text entirely capitalized.) After his eighth tardy, Jones received his second written warning on May 22, 2008. (Doc. 17-9 at 2.) At this time, due to these excessive tardies, Allied Waste also suspended Jones for three days. (*See id.*)

Although granting summary judgment for Allied Waste based solely on Jones's unsatisfactory job performance is proper, the Court notes the record is also devoid of evidence indicating that Allied Waste treated Jones less favorably than other similarly situated, non-African-American employees. Jones concedes that he is unaware of the attendance records of Juan Arevalo and Juan Servellon—employees Jones alleges Allied Waste treated more favorably. (Doc. No. 17-1 at 109.) In fact, Jones cannot prove that Allied Waste treated Servellon more favorably since Allied Waste also terminated Servellon for excessive tardiness. (*See* Doc. No. 17-1 at 109–110.) In short, Jones cannot identify a driver who Allied Waste did

not terminate after being late more than ten times within one year.  No reasonable juror could conclude that Jones is able to establish, by a preponderance of the evidence, a prima facie case of racial discrimination.

Assuming, *arguendo*, that the record is sufficient to establish a prima facie case of discrimination, Jones's noncompliance in discovery resulted in a record devoid of evidence that Allied Waste's proffered nondiscriminatory reason for suspending and terminating Jones—his excessive tardiness—is merely a pretext for discrimination.  Due to Jones's failure to participate in discovery, no reasonable juror could conclude that Allied Waste's proffered nondiscriminatory reason is merely a pretext for discrimination.  As previously discussed, both Jones's suspension and his termination resulted from his tardiness.  *See supra* Part III.B. ¶ 5.  In fact, Jones concedes that Allied Waste terminated him for excessive tardiness.  (*See* Doc. No. 17-1 at 105.)  In the absence of evidence suggesting an inference of discrimination under *McDonnell Douglas*, the Court grants Allied Waste's Motion for Summary Judgment.

IV.   **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment.  A separate order will follow.

|  |  |
|---|---|
| November 29, 2011 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |